# UNITED STATES SUPREME COURT.

GAIUS WHITFIELD, appellant, agt. THE UNITED STATES.

*Cotton sold to the Confederate States — title to.*

The Confederate States government could acquire title to cotton by purchase, and such cotton, at the close of the war, passed to the United States.

In this case the appellant sold his cotton to the confederacy and took their bonds in payment. He contributed thereby directly to the means of prosecuting the rebellion. He thus knowingly devoted his cotton to the war, and his rights must follow its fortunes. He cannot recover in the courts of the United States the purchase money due from the confederacy, upon the principle that a sale upon credit implies a guaranty of the solvency of the purchaser until the payment is made.

*October Term,* 1875.

APPEAL from the court of claims.

Mr. chief justice WAITE delivered the opinion of the court.

During the war of the rebellion Whitfield, a resident of the state of Alabama, being the owner of 177 bales of cotton, raised by himself, sold it to the Confederate States government, agreeing to receive in payment the eight per cent bonds of the Confederate States. In January, 1865, payment of the purchase-price was made and accepted in bonds of the kind agreed upon, payable to bearer, and falling due in the years 1868, 1871 and 1880. Whitfield kept the bonds in his possession, and at the trial of this case below produced them in open court. The cotton was never taken away by the Confederate States authorities, but remained in the possession of Whitfield until September 1st, 1865, when it was seized by the treasury agent of the United States, acting under color

of the authority of the abandoned and captured property acts. After the seizure, fifty-nine bales were restored to Whitfield, pursuant to an arrangement made with him, as compensation for putting the cotton in good order, and the remaining 118 bales were sent forward to New York, where they were sold by the cotton agent of the United States, and the proceeds paid into the treasury. This suit was brought to recover these proceeds.

In *United States* agt. *Huckabee* (16 *Wall.*, 414), we held that real property purchased by and conveyed to the Confederate States during the war passed to the United States at the restoration of peace, by capture, and we sustained the title of the United States thus acquired against a claim made by the vendors of the Confederate States, that the conveyance was obtained from them by duress. The same principle was recognized and acted upon in *United States* agt. *Titus* (21 *Wall.*, 475). We have thus decided that the Confederate States government could acquire title to real property by purchase, and it is not easy to see why a different rule should be applied to personal property. The ownership of that, even more than real property, was required for the operations of the confederacy. Contracts of sale made in aid of the rebellion will not be enforced by the courts, but completed sales occupy a different position. As a general rule, the law leaves the parties to illegal contracts where it finds them, and affords relief to neither. A sale of personal property, when completed, transfers to the purchaser the title of the property sold.

Whitfield's sale in this case was not on credit, but for bonds which passed from hand to hand as money. The transaction, in this respect, was not different from a sale to the United States for any of their public securities payable at a future day. The sale was completed when the bonds were accepted in payment. The title then passed to the Confederate States without a formal delivery. From that time Whitfield ceased to be the owner of the cotton.

The claim, then, that he had the right to retain the possession of the cotton until the purchase-money was paid, because of the insolvency of the confederate government, is not applicable to the facts established by the evidence, as the purchase-money had been paid before the insolvency. But if this were otherwise, it is not easy to see how his claim, growing out of his illegal contract as it does, can be enforced against the United States in the court of claims. In *Sprott* agt. *United States* (20 *Wall.*, 468), it was decided that one owing allegiance to the government of the United States could not avail himself of the courts of the country to enforce a claim under a contract by which, for the sake of gain, he knowingly contributed to the " vital necessity of the rebellion." For that reason we refuse to give effect to a purchase of cotton from the confederate government. This case is not distinguishable from that in principle. Cotton, as we have often said, was, during the late war, as much hostile property as the military supplies and munitions of war it was used to obtain. When Whitfield, therefore, sold his cotton to the confederacy and took their bonds in payment, he contributed directly to the means for prosecuting the rebellion. He says, in his petition, it is true, that his sale was not made to aid the rebellion, but the purchase was clearly for that purpose and no other. This he could not but have known. Under such circumstances " he must be taken to intend the consequences of his voluntary act " (*Hanaur* agt. *Doane*, 12 *Wall.*, 347). By his sale he knowingly devoted his cotton to the war, and his rights must follow its fortunes. The courts of the country would not relieve him against one who held title by conveyance from the Confederate States and under that title had obtained possession. Neither would they interfere in behalf of a purchaser from the Confederate States to enforce possession under his sale. But when his possession has been lost by reason of his sale, no matter how, the courts will afford him no relief against the loss. Having by his acts entered the lists against his rightful government, he cannot,

if he loses, ask it for protection against what he has voluntarily done. In this case he seeks to enforce a right growing out of his contract of sale, which was tainted with the vice of the rebellion.

It was a contract which could not have been enforced against him, and he is equally powerless under its provisions against others. He seeks, in effect, by this action to recover, in the courts of the United States, the purchase-money due from the Confederate States, upon the principle that a sale upon credit implies a guaranty of the solvency of the purchaser until the payment is made. We have already seen that such is not his position here; but if it were, having lost his possession, he had no standing in court for relief. He is not the owner of the property, and his lien is not one the courts of the United States will enforce.

The judgment of the court of claims is affirmed.